**CURLEE CLOTHING COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 79–1173.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1979.

Decided Oct. 22, 1979.

Rehearing Denied Jan. 2, 1980.

Paul J. Schroeder, Jr., Spoehrer & Lemkemeier, St. Louis, Mo. (argued), and John R. Truman, St. Louis, Mo., on brief, for petitioner.

Lafe E. Solomon, N. L. R. B., Washington, D. C. (argued), Kenneth B. Hipp, Deputy Asst. Gen. Counsel, John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, and Robert E. Allen, Acting Associate Gen. Counsel, Washington, D. C., on brief, for respondent.

Before BRIGHT and HENLEY, Circuit Judges, and REGAN, Senior District Judge.*

BRIGHT, Circuit Judge.

Curlee Clothing Company (Curlee or the Company) petitions for review of an order of the National Labor Relations Board[1] (the Board) and the Board cross-petitions for enforcement. The Board affirmed the decision of the administrative law judge to enter a bargaining order in favor of the Southwest Regional Joint Board, Amalgamated Clothing and Textile Workers Union, AFL–CIO–CLC (the Union). Curlee resists enforcement of the order, arguing that the administrative law judge's failure to sequester witnesses at trial pursuant to Curlee's motion prejudicially affected the proceedings. Curlee also urges that the case should be remanded because the Board's summary denial of its motion to reopen the record violated section 8(c) of the Administrative Procedure Act, 5 U.S.C. § 557(c) (1976). We reject these contentions and enforce the Board's order.

---

* JOHN K. REGAN, United States District Judge, Eastern District of Missouri, sitting by designation.

1. *Curlee Clothing Co.*, 240 NLRB No. 41, 100 LRRM 1423 (1979).

## I. *Background.*

Prior to a representation election held September 3, 1976, Curlee had refused to bargain with the Union, rejecting the Union's claim to majority status among the employees of the Company's Winchester, Kentucky, plant. The origin of this dispute lies in the Company's preelection misconduct.

The Union lost the representation election and thereafter charged, in substance, that the Company's preelection conduct violated section 8(a)(1) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1) (1976), and dissipated the Union's authorization card majority. The regional director issued a complaint against the Company and the general counsel sought a bargaining order. Both the administrative law judge and the Board found a bargaining order without a new election appropriate, and the Board has issued one.

At the hearing on the unfair labor practice charges, a crucial issue was the validity of authorization cards signed by employees. Relying on principles enunciated in *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), the Union successfully claimed that it had held valid authorization cards signed by a majority of employees prior to the Company's unfair labor practices, and therefore it was entitled to represent the employees without a rerun election.

The Company now contends that the administrative law judge's failure to sequester witnesses hampered its ability to cross-examine these witnesses on testimony concerning the validity of the authorization cards and the events supporting the unfair labor charges.

## II. *Sequestration.*

*Unga Painting Corp.*, 237 NLRB No. 212, 99 LRRM 1141 (1978), sets forth the Board's present rules on the sequestration of witnesses.[2] Although *Unga Painting* would have required the sequestration of the witnesses who testified in this case, the administrative law judge heard this case before the Board decided *Unga*.

In reviewing the administrative law judge's failure to sequester witnesses here, the Board observed that the witnesses testified to many different events involving the solicitation of authorization cards and not to a single event only. The Board also noted that the administrative law judge's refusal to sequester the over 200 witnesses arose from the difficulty of accommodating them anywhere but in the courtroom. In addition, our independent review of the record convinces us that there is ample evidence of numerous and substantial section 8(a)(1) violations even discounting the corroborative testimony provided by the nonsequestered witnesses.

▮ Although we may agree that the administrative law judge should have sequestered the witnesses, under the circumstances his failure to do so resulted in no real prejudice to Curlee. Absent a showing of prejudice, we need not set aside the Board's decision. *See NLRB v. Hale Manufacturing Co.*, 570 F.2d 705, 711 (8th Cir. 1978). *Accord, L. S. Ayres & Co. v. NLRB*, 551 F.2d 586, 588 (4th Cir. 1977) (*per curiam*); *NLRB v. Stark*, 525 F.2d 422, 431 (2d Cir.), *cert. denied*, 424 U.S. 967, 96 S.Ct. 1463, 47 L.Ed.2d 734 (1975).

## III. *The Order Denying Reopening.*

The administrative law judge heard this case during six days in April 1977. On October 5, 1977, he filed a forty-four page opinion disposing of the many issues presented to him. The Board affirmed the administrative law judge's decision on January 29, 1979, with Member Murphy concurring separately. Shortly thereafter, on

---

2. The Board in *Unga* announced that it would follow Fed.R.Evid. 615 and accordingly formulated a nondiscretionary rule requiring the sequestration of all witnesses except discriminatees on the request of a party. Discriminatees are partially excluded from the ambit of the rule. *See also NLRB v. Hale Manufacturing Co.*, 570 F.2d 705, 710–11 (8th Cir. 1978); *NLRB v. Stark*, 525 F.2d 422 (2d Cir.), *cert. denied*, 424 U.S. 967, 96 S.Ct. 1463, 47 L.Ed.2d 734 (1975).

February 5, 1979, the Company sought to reopen the record on the ground that several employees responsible for section 8(a)(1) violations had terminated their employment with Curlee and a fair rerun election was therefore possible. The Company further alleged in its motion that there had been substantial employee turnover in the two and one-half years which had elapsed since the unfair labor practices had occurred. The Board denied the motion "as lacking merit."

■ Assuming, arguendo, that section 8(c) of the Administrative Procedure Act, 5 U.S.C. § 557(c),[3] applies and requires a statement of reasons for the Board's denial of Curlee's motion, we believe that the Board's statement that the motion was denied "as lacking merit" complies with the statute under the circumstances. The factual allegations contained in the motion do not compel reopening.

■■ A *Gissel* bargaining order aims to restore conditions as they existed before the employer's unlawful campaign. *NLRB v. Gissel Packing Co., supra*, 395 U.S. at 612, 89 S.Ct. 1918, 23 L.Ed.2d 547. Whether a *Gissel* order is appropriate must be judged in light of conditions existing at the time the Board entertained the matter. *E. g., NLRB v. Pacific Southwest Airlines*, 550 F.2d 1148, 1153 (9th Cir. 1977). Neither the Board nor the courts are required to consider events which occur after the direction of a bargaining order by the Board. *Id.* at 1152–53; *G. P. D., Inc. v. NLRB*, 430 F.2d 963 (6th Cir. 1970); *NLRB v. L. B. Foster Co.*, 418 F.2d 1, 4 (9th Cir. 1969), *cert.*

*denied*, 397 U.S. 990, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970) (any other rule would "put a premium upon continued litigation by the employer").[4] Employee turnover and the passage of time are therefore insufficient factual allegations to compel reopening the record.

Under the circumstances, the Board's characterization of the Company's motion "as lacking merit" adequately served to notify the Company and this Court that the Board remained steadfast in support of its decision only recently returned.

Accordingly, we enforce the Board's order.

---

**3.** Section 8(c) of the Administrative Procedure Act, 5 U.S.C. § 557(c) (1976), provides: "All decisions * * * shall include a statement of—(A) findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record[.]"

**4.** However, where the Board's findings of fact are insufficient to support a *Gissel* bargaining order, the Board on remand must consider whether contemporary conditions permit a fair rerun election. *See, e. g., NLRB v. Jamaica Towing, Inc.*, Nos. 79–4049 and 79–1214 (2d Cir. July 24, 1979) (no op.), 86 Lab.Cas. ¶ 11,-433 (1979); *NLRB v. Armcor Industries, Inc.*, 588 F.2d 821 (3d Cir. 1978) (no op.), 83 Lab.

Cas. ¶ 10,618 (1978), 98 LRRM 2441 (1978); *NLRB v. Gibson Products Co. of Washington Parish La., Inc.*, 494 F.2d 762, 765–66 (5th Cir. 1974); *NLRB v. American Cable Systems, Inc.*, 427 F.2d 446 (5th Cir.), *cert. denied*, 400 U.S. 957, 91 S.Ct. 356, 27 L.Ed.2d 266 (1970). The courts have noted that the possible subordination of majority preferences attendant to the issuance of such a bargaining order is mitigated by the entitlement of employees to petition for a decertification election within a reasonable time. *See, e. g., NLRB v. Drives, Inc.*, 440 F.2d 354 (7th Cir.), *cert. denied sub nom. General Drivers & Dairy Employees, Local Union No. 563 v. NLRB*, 404 U.S. 912, 30 L.Ed.2d 185 (1971).