**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**AMERICAN CABLE SYSTEMS, INC., Respondent.**

**No. 25358.**

United States Court of Appeals, Fifth Circuit.

March 30, 1970.

Rehearing Denied and Rehearing En Banc Denied June 23, 1970.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Peter Ames Eveleth, Washington, D. C., for petitioner.

Robert Wachs, Philadelphia, Pa., Wm. A. McHugh, Jr., Atlanta, Ga., Kane & Koons, Washington, D. C., for respondent.

Before GOLDBERG and AINSWORTH, Circuit Judges, and SPEARS, District Judge.

GOLDBERG, Circuit Judge.

In the first act of what we trust will be only a two-act play and not a drama of Shakespearian proportions, we remanded this case to the National Labor Relations Board for additional findings in light of NLRB v. Gissel Packing Co., 1969, 395 U.S. 575, 89 S.Ct. 1918, 23 L. Ed.2d 547. In remanding we said:

"Under the *Gissel* holding a bargaining order may issue where: (a) the union had valid authorization cards from a majority of the employees in an appropriate bargaining unit; (b) the employer's unfair labor practices, although not 'outrageous' and 'pervasive' enough to justify a bargaining order in the absence of a card majority, were still serious and extensive; (c) 'the possibility of erasing the effects of past practices and of ensuring a fair election (or a fair rerun) by the use of traditional remedies, though present, is slight'; and (d) employee sentiment can best be protected in the particular case by a bargaining order. In the case *sub judice* the Board did not make findings on all of these points because 'its current practice at the time required it to phrase its findings in terms of an employer's good faith doubts * * *' Since it is inappropriate for this Court to make findings on these questions, we remand the case to the Board for appropriate findings." NLRB v. American Cable Systems, Inc., 5 Cir. 1969, 414 F.2d 661, 668.

On remand the Board made the following supplemental findings, which were issued on December 3, 1969:

"Without relying on our earlier finding that the Respondent acted in bad faith in refusing to bargain with the Union as the majority representative of its employees in an appropriate unit, we now find that the Respondent's violations of Section 8(a) (1) and (3) of the Act, as summarized above, not only precluded a fair election, but were of such pervasive and aggravated character as to warrant the finding, which we now make, that an order directing the Respondent to bargain with the Union is necessary to repair their unlawful effects. The aforementioned conduct has undermined the Union's majority, and caused an election to be a less reliable guide to the employees' free choice than the signed authorization cards by which they designated the Union to represent them."

On the basis of these supplemental findings the Board again petitions this court to enforce its order requiring the Company to recognize and bargain with the Union. Having determined that

these findings of the Board are still insufficient under the teachings of *Gissel* to justify a bargaining order, we once again remand to the Board for additional findings.

In making its determination on December 3, 1969, that the Company's 1965 violations of § 8(a) (1) and (3) precluded a fair election and necessitated a bargaining order, the Board specifically refused to consider evidence offered by the Company that a complete turnover in employees and the departure of the only management official involved in the unfair labor practices made a free election possible at that time. The Board's refusal to consider these changes occurring in the intervening years was apparently predicated on the opinion of the Ninth Circuit in NLRB v. L. B. Foster Co., 9 Cir. 1969, 418 F.2d 1. In *Foster* the complaint was made that changes occurring between the Board's original order and the enforcement proceeding made enforcement of the bargaining order inequitable. The court refused to consider those changes and enforced the order based on the Board's original findings. The *Foster* case, however, is distinguishable because although it was decided after *Gissel* it did not involve a remand in light of that case to the Board for additional findings. In the instant case a different situation obtains. The Board's original findings were inadequate under the teachings of *Gissel* and the case had to be remanded to the Board for further findings. We think that on remand the Board should have taken the opportunity to consider the then existing situation at American Cable to determine whether the electoral atmosphere was still so contaminated that a bargaining order was then justified.

In so holding we are not unaware of the general rule of long standing that compliance with the Board order, loss of union majority, or other changes occurring after an unfair labor practice are not usually proper reasons for denying enforcement of a Board order. NLRB v. Katz, 1962, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230; NLRB v. Mexia Textile Mills, Inc., 1950, 339 U.S. 563, 70 S.Ct. 826, 94 L.Ed. 1067; Franks Bros Co. v. NLRB, 1944, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020; NLRB v. P. Lorillard Co., 1942, 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380. We find the reasoning of these cases inapplicable to the instant case, however, because of the Supreme Court's decision in *Gissel*. In *Gissel* the Court made it plain that a bargaining order issued on the basis of a card majority is not the preferred method of establishing a union's representative status and that such an order should be issued only when in the Board's judgment "the possibility of * * * ensuring a fair election * * * by the use of traditional remedies, though present is slight * * *" 395 U.S. at 614, 89 S.Ct. at 1940. The Court in *Gissel* thus placed bargaining orders based on a card majority in a special category: an extraordinary remedy available to the Board to overcome the polluting effects of the employer's unfair labor practices on the electoral atmosphere. The order is not a traditional punitive remedy, but is a therapeutic one. It is not, therefore, the type of remedy which is automatically entitled to enforcement at any time after the occurrence of the unfair labor practice. See, e. g., NLRB v. Mexia Textile Mills, Inc., *supra*. On the contrary, the Supreme Court indicated that an open free election rather than a bargaining order is the preferred remedy if such an election is possible. We think it clear from the foregoing that the Court in *Gissel* clearly contemplated that no bargaining order should be issued unless at the time the Board issues such an order it finds the electoral atmosphere unlikely to produce a fair election.

In the instant case the Board made no such finding before it issued the December 3, 1969, bargaining order which we are here asked to enforce. Instead, on remand the Board refused to look at the contemporary necessity for such an order, satisfying itself with a

jejune regurgitation of the Company's 1965 waywardness. We deem such findings insufficient under the teachings of *Gissel* to justify a 1970 bargaining order. *Gissel* does not apply a nunc pro tunc principle, giving the then sins of the Company a now application. It requires contemporaneity—a present view, albeit with an historical prospective. Industrial democracy should be allowed to work its will if the present conditions are sufficiently antiseptic for an election. On the other hand, if the employer's 1965 violations of § 8(a) (1) and (3) have a 1970 existence, *Gissel* commands the issuance of a bargaining order. Since the Board did not address itself to this question, we must again remand for further findings as to the present necessity for a bargaining order.

In addition, we think a further word of caution is in order. In our previous disposition of this case we requested findings from the Board. The response which we received was a litany, reciting conclusions by rote without factual explication. We believe that the questions involved in this area of labor law are far too important for such formalistic and perfunctory treatment. Since *Gissel* teaches us that authorization cards are not as trustworthy as ballots all concerned must be particularly careful lest the principles of majoritarianism in union representation be unnecessarily frustrated by the cavalier use of bargaining orders. We therefore remand to the Board with the hope that we have here given sufficient guidance that the Board may resolve this controversy now approaching its fifth anniversary.

Remanded.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.