**UNITED SERVICES FOR the HANDICAPPED, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 80–1673.

United States Court of Appeals, Sixth Circuit.

Argued April 13, 1982.

Decided May 24, 1982.

Robert S. Carabell, Roetzel & Andress, Edward G. Kemp, Akron, Ohio, for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Jolane Findley, N.L.R.B., Washington, D. C., for respondent.

Before MARTIN and CONTIE, Circuit Judges, and TUTTLE,* Senior Circuit Judge.

PER CURIAM.

This is an appeal by United Services for the Handicapped (USH) of the decision of the National Labor Relations Board (Board), finding the appellant to have violated section 8(a)(1), (3) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3) and (5). USH also appeals the Board's cease and desist order and bargaining order. The Board has filed a cross-appeal for enforcement of its order.

A hearing before an Administrative Law Judge (ALJ) was had on June 25–27, 1979 and the ALJ issued his recommendation to the Board on October 9, 1979. The ALJ found the appellant in violation of Section 8(a)(3) for discharging six employees for engaging in union activities and in violation of section 8(a)(1) for threatening to discharge employees and for threatening to discontinue operations in retaliation for union activities. The ALJ, however, refused to issue an order requiring USH to bargain with its employees' representative on the basis that, unlike the usual commercial operation, USH is publicly funded by charitable gifts and USH employees were aware that the management was concerned with its public image and ability to collect charitable gifts.

General counsel filed exceptions to the ALJ's order on October 31, 1979, and on August 27, 1980, the NLRB issued its final decision and order. The NLRB affirmed the ALJ's decision finding violations of section 8(a)(3) and (1). The Board also found additional section 8(a)(3) and (1) violations. Further, the Board also found that USH violated section 8(a)(5) and (1) of the Act by refusing to recognize and bargain with the

---

* Honorable Elbert P. Tuttle, Senior Judge of the United States Court of Appeals for the 11th Circuit, sitting by designation.

employees' union since February 27, 1978. Based on these findings, the NLRB issued an order to USH to cease and desist from all unfair labor practices, to reinstate discharged employees, to provide back pay to certain employees and to recognize and bargain collectively with the employees' bargaining representative. In regard to the bargaining order, the Board rejected the ALJ's conclusion not to order bargaining. The fear that union activities could discourage public contributions, the Board concluded, was not an appropriate basis for fashioning a remedy.

USH is a non-profit corporation which operates a pre-school for children aged two to five with learning disabilities and a transportation operation which provides transportation services for its pre-schoolers as well as for clients of public service agencies in the Akron, Ohio, area. In late 1977, USH restructured its transportation department for the purpose of correcting poor work habits developing within the department. During this period a "crack-down" on employee work habits was begun.

On February 7, 1978, approximately 25 hourly van and bus drivers of the transportation department signed a written petition and submitted it to the management of USH listing complaints and demands to improve working conditions. The following day, employee McHenry, who drafted the petition for improved work conditions, was reprimanded and placed on 90-day probation for excessive tardiness and absenteeism.

Upon request of the USH van and bus drivers, USH refused to negotiate with the drivers collectively concerning the work conditions. And, on February 24, 1978, several drivers struck for the purpose of forcing the USH to negotiate with them concerning the work conditions including a wage increase, a guaranteed 40-hour work week, overtime pay, better benefits, discontinued harassment and better maintained buses. One working day after the strike, employee Ward was discharged. The USH alleged various job related reasons for Ward's dismissal but the Board found that Ward was dismissed because of his concerted union organizing activities.

On February 27, 1978, the drivers called the Retail Clerk's International Union, Local 698 (the Union) for support. On that day, authorization cards were received from a majority of the employees in the transportation department authorizing the Union to represent them. The Union then demanded to be recognized as the transportation department employees' bargaining agent and was refused by USH.

On the advice of the Union, the employees returned to work unconditionally during the morning of February 28, 1978. The director of the transportation department dismissed one employee (Adrian Coleman) and told the other employees to report for work the next work day. On March 1, 1978, USH discharged four more employees (McHenry, Hollinger, Terrass and dispatcher Gattis).

Additionally, during the period from February 6, 1978, through June 1978, USH management made various threats to several employees of the transportation department concerning their discharge and the corporation's demise if they participated in union activities.

The petitioner asserts that the Board's decision and order is not justified because there does not exist substantial evidence to conclude: 1) that the strike of February 24, 1978, was an unfair labor practice strike, 2) that the discharge of five employees was the result of their participation in union activities or the strike, and 3) that one discharged employee was not a supervisor. USH also claims that the Board erred in finding USH's unfair labor practices so outrageous and pervasive as to preclude the holding of a fair election thereby justifying a bargaining order.

To the extent that the Board found the strike of February 24, 1978, was, at least in part, an unfair labor practice strike, substantial evidence exists to support this conclusion. Several incidents of unfair labor practices occurred between February 7, 1978, and February 24, 1978, by

USH in an effort to suppress union activities. The strikers obviously had economic demands but these demands cannot be said to have been the sole reason for the strike. The strikers were complaining, at the time, about continued harassment by USH management.

Additionally, based on this conclusion, the finding that the four discharged strikers were entitled to reinstatement to their original positions was appropriate. *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1965); *NLRB v. Hartmann Luggage Co.*, 453 F.2d 178 (6th Cir. 1971).

■ The Board's conclusion that Ward's discharge was based on his concerted union activities was also supported by substantial evidence. The timing of the discharge, together with the discharge of other employees for union activities, supports the Board's conclusion. Further, the finding that employee Gattis was not a supervisor was supported by the evidence that Gattis was never informed that she possessed supervisory powers nor did she exercise any of the normal indicia of supervisory status. The Board's factual determination, therefore, should not be disturbed. *Machine Tool and Gear v. NLRB*, 652 F.2d 596, 597 (6th Cir. 1980); *Pulley v. NLRB*, 395 F.2d 870, 875 (6th Cir. 1968).

The most significant issue raised on this appeal is whether or not the bargaining order was justified in place of an election under the principles laid out in *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), especially in light of the fact the ALJ recommended not to issue a bargaining order.

■ An election is the preferred method of determining the choice by employees of a collective bargaining representative. *Donn Products, Inc. v. NLRB*, 613 F.2d 162, 165 (6th Cir.), *cert. denied*, 447 U.S. 906, 100 S.Ct. 2988, 64 L.Ed.2d 855 (1980). *NLRB v. Gibraltar Industries, Inc.*, 653 F.2d 1091, 1099 (6th Cir. 1981). In *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547, the Supreme Court held, however, that a bargaining order may issue without an election in either of two situations: 1) "'exceptional' cases marked by 'outrageous' and 'pervasive' unfair labor practices", and 2) "less extraordinary cases marked by less pervasive practices which nonetheless still have the tendency to undermine majority strength and impede the election processes." *Id.* at 613, 614, 89 S.Ct. at 1940.

■ In evaluating the NLRB's order to bargain under the principles laid out in *Gissel*, the Sixth Circuit has articulated two principles of review. First, the usual deference given to the NLRB findings is lessened when the Board orders the strong and less preferred remedy of a bargaining order without holding a new election. *NLRB v. Rexair, Inc.*, 646 F.2d 249, 250 (6th Cir. 1981). Second, "[b]argaining orders have not been enforced when '[t]he Board made no findings or detailed analysis as to the residual impact . . ., or the likelihood of recurrence, of any of the unfair labor practices,' or when they are 'based on conclusory statements unsupported by sufficient facts' . . . or when the Board's reasoning consisted simply of 'a litany, reciting conclusions by rote without factual explication.'" *Id.* at 251 (citations omitted).

■ Further, to determine when a bargaining order is appropriate, the analysis must concentrate on whether a fair election can be held. *NLRB v. Gissel Packing Co.*, 395 U.S. at 614, 89 S.Ct. at 1940. The analysis should center on the present effects of past coercive unfair labor practices or present coercive unfair labor practices.

■ In the present case, the Board rejected the ALJ's policy considerations regarding the fact that USH is a nonprofit public service organization dependent upon public financial support. The Board found that several threats of reprisal, together with anti-union activities, threats of "closure of the store" if unionization occurred, and the discharge of six employees, four of whom were terminated permanently, constituted a sufficient basis for a bargaining order.

Based on these factors, the Board's conclusion that a bargaining order was appropriate is supported by substantial evidence. *NLRB v. Naum Brothers, Inc.*, 637 F.2d 589 (6th Cir. 1981). Unlike the cases *Donn Products, Inc. v. NLRB*, 613 F.2d 162 (6th Cir.), *cert. denied*, 447 U.S. 906, 100 S.Ct. 2988, 64 L.Ed.2d 855 (1980), and *NLRB v. East Side Shopper, Inc.*, 498 F.2d 1334 (6th Cir. 1974), this case presents the situation where the threats and harassment by management are given a continuing effect by the permanent discharge of employees. The continuing impact of the threat of discharge, together with the reality of permanent discharge of other employees without reinstatement, strongly supports a conclusion that the fair election process has been tainted. Accordingly, the order of the Board is enforced.

BOYCE F. MARTIN, Circuit Judge, dissenting in part.

I support the Court's affirmance of the Board's order except in regard to the *Gissel* bargaining order. *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969).