NATIONAL LABOR RELATIONS
BOARD, Petitioner,
Cross-Respondent,

v.

QUALITY ALUMINUM PRODUCTS,
INC., Respondent, Cross-Petitioner.

Nos. 86–5268, 86–5343.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 29, 1987.

Decided March 20, 1987.

District of Ohio, sitting by designation.

Richard Masters, argued, Hollis L. Searcy, Amshoff and Amshoff, Louisville, Ky., for respondent, cross-petitioner.

Elliott Moore, Deputy Associate General Counsel N.L.R.B., Washington, D.C., Helen Morgan, David Fleischer, argued, Emil C. Farkas, Director, Region 9, NLRB, Cincinnati, Ohio, for petitioner, cross-respondent.

* The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation.

Before ENGEL and KRUPANSKY, Circuit Judges; and SPIEGEL,* District Judge.

PER CURIAM.

This matter is before the court on cross-petitions to review and enforce an order of the National Labor Relations Board determining that Quality Aluminum Products had violated sections 8(a)(1), 8(a)(3), and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), 158(a)(3) and 158(a)(5). The Board's opinion is reported at 278 N.L.R.B. No. 49.

Quality Aluminum is a manufacturer and distributor of windows, doors, awnings, and gutters. Its business is seasonal, and normally requires employee layoffs during the winter. In November 1982, some employees of Quality Aluminum signed union authorization cards and wore buttons favoring a union. The Board alleges that from the date these buttons were worn, and continuing for approximately one week, Quality Aluminum threatened the discharge of workers and closure of the plant because the employees had engaged in union activities, and gave the impression of surveillance of such activities, all allegedly in violation of section 8(a)(1), made discriminatory layoffs for engaging in union activities, in violation of sections 8(a)(1) and 8(a)(3), and refused to bargain, contrary to section 8(a)(5). There is no dispute regarding which employees were laid off.

The administrative law judge found that all the laid off employees were union supporters. He found a violation of section 8(a)(1) because the employees who openly supported the union were swiftly laid off. Although in years past layoffs had been made, and might have been made in 1982 at some point, the normal procedures for making layoffs were not complied with that year. The administrative law judge ordered reinstatement and backpay, and a bargaining order pursuant to *NLRB v. Gissel Packing Company*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), not on

the grounds that the unfair labor practices in this case were pervasive, but that the company's actions had a tendency to undermine the union's majority strength and impede the election process. The Board modified the administrative law judge's order concerning reinstatement because of the reemployment of some of the employees, and based the *Gissel* bargaining order not on the administrative law judge's rationale, but on the ground that these violations were extensive and pervasive, and would leave a lingering coercive effect on the employees' willingness to exercise their protected rights.

On appeal, Quality Aluminum challenges the Board's findings that the employees were laid off because of their union activities, that they were threatened, and that the majority of the employees had designated the union to be their collective bargaining representative, as well as the propriety of the Board's *Gissel* bargaining order.

 Upon consideration, the court is of the opinion that substantial evidence supports the finding of the administrative law judge as modified by the decision of the Board. We further conclude that the Board did not abuse its discretion in determining that a bargaining order was the appropriate remedy under *NLRB v. Gissel Packing Company, supra.*

Accordingly, for the reasons set forth in the decision of the Board above cited, the order of the Board is enforced, and the petition of the respondent is DENIED.

KRUPANSKY, Circuit Judge, dissenting.

Considering the deferential standard of review which governs this court's examination of determinations of the National Labor Relations Board (the NLRB or the Board), I could join the majority, although with some reservations, in affirming the Board's finding on this record that the respondent, Quality Aluminum Products, Inc. (Quality), engaged in the charged unfair labor practices. I am constrained to dissent, however, on the basis that the Board's imposition of the extraordinary remedy of a bargaining order, rather than

the more traditional relief of directing that a Board-supervised representation election be conducted, constituted an abuse of discretion unsupported by the instant record which should accordingly be denied enforcement by this court.

It should be noted at the outset that this court exercises less deference to the Board's findings and scrutinizes its decision more closely when it has imposed the very harsh remedy of issuing a bargaining order without having conducted an election. *See Exchange Bank v. NLRB*, 732 F.2d 60, 63 (6th Cir.1984); *NLRB v. Valley Plaza, Inc.*, 715 F.2d 237, 244 (6th Cir.1983); *NLRB v. Rexair, Inc.*, 646 F.2d 249, 250 (6th Cir.1981). Such scrutiny of the record in the case sub judice fails to disclose that the effects of the employer's violations were so pervasive or coercive that they precluded a fair and reliable representation election or otherwise necessitated a bargaining order.

Initially, it was undisputed by all parties that Quality's business was highly seasonal in nature and traditionally evidenced a severe slump during the winter months. As a consequence, the general practice of the company was to lay off a proportionately large number of its relatively small work force in the months of October or November through the spring of the following year. The employees were acutely aware of this practice and that layoffs were imminent during the forthcoming slow season. The issue of seasonal layoffs was a factor which had motivated the undertaken union activity. The administrative law judge conceded that layoffs were inevitable at the facility in question at the time here in issue. In keeping with past practice, all six of the laid off employees were offered employment in the spring, four of whom accepted and two of whom declined for personal reasons. Moreover, with respect to the alleged anti-union statements, such expressions were attributable to a mid-level management employee whose actions were unknown to higher level company officials. Finally, the record reflects that the company and the union contemporaneously with the challenged layoffs entered into a stipu-

lated, Board-supervised representation election, which was in fact conducted in January of 1983. In sum, the circumstances simply do not support the Board's conclusion that the lingering effects of the rather unexceptional violations at issue herein, which occurred over four years ago, were so pervasive or coercive as to foreclose the conducting of a fair election or otherwise warrant a bargaining order. Accordingly, I would deny enforcement of that section of the Board's order imposing a bargaining order rather than mandating an election.